IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | COMPLAINT |
| DECOSTAR INDUSTRIES, INC., | ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion, and to provide appropriate relief to Dina Lucas Velasquez ("Velasquez"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant Decostar Industries, Inc. ("Defendant") denied Mrs. Velasquez a reasonable accommodation and terminated her employment because of her religious beliefs in violation of Title VII.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Newnan Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has been a Georgia corporation, doing business in the state of Georgia, and the City of Carrollton, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Velasquez filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On January 12, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to eliminate the discriminatory practices and provide appropriate relief.

8. On March 14, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. Since at least January 2014, Defendant has engaged in unlawful employment practices at its manufacturing facility in Carrollton, Georgia, in violation of Sections 703(a)(1) and (m) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1) and (m), by denying Velasquez a reasonable accommodation and terminating her employment, in whole or in part, because of her religious beliefs in violation of Title VII.

11. Velasquez has been a member of The Seventh-Day Adventist Church since childhood, and she recommitted to her faith in 2007.

12. In accordance with her religion, Velasquez strictly adheres to the observance of the Sabbath beginning at sundown Friday and ending at sundown Saturday.

13. Defendant hired Velasquez on or about November 5, 2007, as a Truck Loader in its shipping department. She worked Monday through Friday from 4:00 p.m. to 1:00 a.m. on the second of two shifts operated by Defendant.

14. Beginning sometime in 2010, Velasquez moved to a different department and began working Monday through Friday from 8:00 a.m. to 6:00 p.m. on Defendant's first shift. During this same time, Defendant began requiring

that all employees work overtime hours on Saturdays, as needed.

15. On or around March 3, 2010, Velasquez informed her supervisor that her religion required strict observance of the Sabbath from sundown Friday to sundown Saturday and requested to be excused from Defendant's requirement that all employees work overtime hours on Saturdays. Saturday shifts were scheduled during hours observed as the Sabbath under Velasquez's religion.

16. On that same day, Velasquez submitted a written request for a religious accommodation to Defendant's Human Resources representative Maria Vasquez, providing notice that she was a member of the Seventh-Day Adventist Church, that she observed the Sabbath from sundown Friday to sundown Saturday, that it would be a violation of her religious beliefs to work on Saturday during hours observed as the Sabbath, and that she wanted to be excused from working during those hours.

17. In her written request, Velasquez also suggested several possible accommodations, including moving to a shift or department that does not operate on Friday night or Saturday, swapping shifts with other employees, working on Sundays or holidays in lieu of Saturdays, and working a flexible schedule so that she may leave work Friday afternoon 45 minutes before sundown.

18. Velasquez never received a response from Human Resources

regarding her written request.

19. Within days of making her request, Velasquez's supervisor granted her request to be excused from working Saturdays based on her religion. Defendant accommodated Velasquez throughout the time she reported to this particular supervisor.

20. Sometime in 2012, Velasquez moved to a different department and began reporting to a new supervisor.

21. Velasquez informed the new supervisor that she had previously requested to be excused from working Saturdays so that she may observe the Sabbath as a religious accommodation, that she had provided supporting documentation to Defendant's Human Resources office, and that she had been accommodated during the time she reported to her previous supervisor.

22. Defendant accommodated Velasquez throughout the time she reported to this particular supervisor.

23. In or around January 2014, Carlos Rivera ("Rivera") replaced Velasquez's supervisor, and she began reporting directly to him. Velasquez explained to Rivera that she had previously requested to be excused from working Saturdays so that she may observe the Sabbath as a religious accommodation, that

she had provided supporting documentation to Defendant's Human Resources office, and that she had been accommodated during the time she reported to her previous supervisors.

24. However, Rivera informed Velasquez that she would be required to work on the Saturdays deemed mandatory by Defendant or her employment would be terminated.

25. Rivera did not terminate Velasquez's employment after she failed to report to work on the first mandatory Saturday after she began reporting to him.

26. Thereafter, every Monday following a mandatory Saturday, Rivera questioned Velasquez's absence. Each time Velasquez explained that her religion required strict observance of the Sabbath from sundown Friday to sundown Saturday.

27. Beginning in or around March 2014, Velasquez experienced stress and depression due to Rivera's constant questioning regarding her need for a religious accommodation. Velasquez also experienced loss of vision in one eye and was diagnosed with a swollen optic vein.

28. Velasquez was subsequently hospitalized as a result of her condition and was restricted from working by her treating physician for approximately three

months.  Velasquez returned to work on June 9, 2014.

29. Upon her return to work, Rivera presented Velasquez with two options in response to her request to be excused from working Saturdays and recommended that she alternate between the two.

30. The first option required Velasquez to request paid time off for the Friday before or Monday after any scheduled mandatory Saturday in order to be excused from working any contiguous Saturday.

31. The second option required Velasquez to call Rivera 30 minutes prior to the start of her scheduled shift to report her absence and request unpaid leave to avoid accrual of attendance points.

32. Velasquez heeded Rivera's instructions alternating between the two options presented to her, but Rivera continued to question Velasquez's absence on the Monday following any mandatory Saturdays.

33. When Velasquez called in to report her absence on Saturday morning, the following Monday Rivera would question why she failed to take paid time off. Conversely, if Velasquez took paid time off, Rivera would state that she was required to call in to report her absence.

34. On or around July 22, 2014, Velasquez submitted a second written

request for religious accommodation to Defendant's Human Resources office, providing notice that she was a member of the Seventh-Day Adventist Church, that she observed the Sabbath from sundown Friday to sundown Saturday, that it would be a violation of her religious beliefs to work during the Sabbath, and that she required an accommodation based on her religion.

35. In the second written request, Velasquez also indicated several possible accommodations, including moving to a shift or department that does not operate on Friday night or Saturday, swapping shifts with other employees, working on Sundays or holidays in place of Saturdays, and working a flexible schedule so that she may leave work Friday afternoon 45 minutes before sundown.

36. Velasquez never received a response from Human Resources regarding the second written request, and Rivera continued to require Velasquez to either take paid time off or to call in when she was scheduled to work on Saturday.

37. Thereafter, on two separate occasions, Velasquez continued to seek assistance from Defendant's Human Resources office regarding her requests for accommodation.

38. During the first interaction with Defendant's Human Resources

office, Velasquez explained to a representative that she had been accommodated in the past and was unclear as to the reason for Rivera's refusal to accommodate her religious beliefs.

39. During the second interaction with Defendant's Human Resources office, the same representative advised Velasquez that there was nothing she could do to ameliorate the situation because, as her supervisor, Rivera had the discretion to deny her request for a religious accommodation.

40. On August 5, 2014, Velasquez was suspended for two days for failing to report to work on a mandatory Saturday and Rivera informed Velasquez that her employment would be terminated if she continued to be absent on mandatory Saturdays.

41. The next day, on August 6, 2014, Velasquez attempted to discuss her suspension with Defendant's Plant Manager but was directed to speak to another member of management. Velasquez inquired as to the availability of any position that was not subject to the mandatory Saturday work requirement.

42. Defendant's manager informed Velasquez that there was no such position available at that time, but that she would be moved, should one become available.

43. In or around September 2014, Respondent transitioned to a three-shift operation with employees on the third shift scheduled to work from 11:45 p.m. to 8:05 a.m.

44. Around this same time, Velasquez's previous supervisor who had granted her request for an accommodation discussed the possibility of Velasquez moving to the third shift with management so that her work schedule would not conflict with her observation of her religious Sabbath.

45. The supervisor spoke with the same manager that stated Velasquez would be moved, should a position that did not conflict with her observation of the Sabbath become available.

46. Defendant's manager subsequently informed Velasquez that she would be allowed to work third shift and that she would be provided information regarding available positions.

47. Defendant never provided the information to Velasquez.

48. On October 27, 2014, Defendant terminated Velasquez's employment for violation of its attendance policy.

49. Velasquez's religion was, at minimum, an unlawful motivating factor in Defendant's decision to terminate her employment.

50.     The effects of the practices complained of in paragraphs 10-49 above have deprived Velasquez of equal employment opportunities and otherwise adversely affected her status as an employee because of her religious beliefs.

51.     The unlawful employment practices complained of in paragraphs 10-49 above were intentional.

52.     The unlawful employment practices complained of in paragraphs 10-49 above were done with malice or with reckless indifference to the federally protected rights of Velasquez.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from terminating applicants or employees because of their request for a religious accommodation, and engaging in any other employment practices which discriminate on the basis of religion.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees with sincerely held religious beliefs and which eradicate the effects of its past and present unlawful employment practices.

C.  Order Defendant to make whole Velasquez by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described above, including but not limited to reinstatement or front pay.

D.  Order Defendant to make whole Velasquez by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search and relocation expenses, in amounts to be determined at trial.

E.  Order Defendant to make whole Velasquez by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain and suffering, inconvenience, loss of enjoyment of life, anxiety, stress, depression, humiliation, and loss of self-esteem, in amounts to be determined at trial.

F.  Order Defendant to pay Velasquez punitive damages for its malicious and reckless conduct described above in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper

in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

                                                 Respectfully submitted,

                                                 JAMES L. LEE
                                                 Acting General Counsel

                                               GWENDOLYN YOUNG REAMS
                                               Associate General Counsel

<u>April 26, 2017</u>                      <u>*s/ Antonette Lettman-Sewell*</u>
DATE                                ANTONETTE LETTMAN-SEWELL
                                               (GA Bar #122575)
                                               Regional Attorney

                                               <u>*s/ Lakisha Duckett-Zimbabwe*</u>
                                               LAKISHA DUCKETT-ZIMBABWE
                                               (GA Bar #231641)
                                               Supervisory Trial Attorney

                                               <u>*s/ Sairalina Montesino*</u>
                                               SAIRALINA MONTESINO
                                               (GA Bar #940665)
                                               Trial Attorney


                                               EQUAL EMPLOYMENT
                                               OPPORTUNITY COMMISSION

Atlanta District Office
100 Alabama St. SW
Atlanta, Georgia 30303
Tel: 404-562-6842
Fax: 404-562-6905

ATTORNEYS FOR PLAINTIFF EEOC